United States Courts
Southern District of Texas
F I L E D

JAN 3 0 2023

Nathan Ochsner, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| John J. Dierlam | § | |
| **Plaintiff** | § | |
| | § | |
| versus | § | |
| | § | CIVIL ACTION NO. 4:16-cv-00307 |
| | § | |
| Joseph R. Biden, in his official capacity | § | |
| as President of the United States et. al. | § | |
| | § | |
| **Defendants** | § | |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR VACATUR
OF PMTD, A NEW ORDER GRANTING PMTD WITH
INTERLOCUTORY CERTIFICATION, AND A STAY
PENDING THE APPEALS COURT DECISION**

---

### Argument

**I  Contrary to the government's contention, this Court has no obligation to state a "controlling question of law."**

On p.2 of the Defendants' Opposition the government states, "the district court bears the burden of showing that ALL of the requirements of the statute are satisfied." They cite *Clark-Dietz & Associates-Engineers v. Basic Const., 702 F.2d 67 (5th Cir. 1983)* for support. However, neither 28 U.S.C. § 1292 nor the case cited support this conclusion.  28 U.S.C. § 1292(b) indicates three questions the judge must answer to certify an appeal. 1)Does the case contain a controlling question of law? 2)Is there a substantial ground for difference of opinion on this subject? 3)Would an appeal advance the ultimate termination of the litigation? These questions can be answered solely in the mind and opinion of the judge. The judge has NO responsibility nor does the statute require the judge to justify or even state any answer to these questions. If the judge does not identify a controlling question of law this burden falls upon the appellant, which

1

is also my preference. The *Clark-Dietz* court did not identify a controlling question of law and the appeals court found that the issues raised by the appellant were disagreements with the facts determined by the judge in his 35 page ruling. In the instant case, the judge ruled for the government to dismiss all claims except a retrospective RFRA claim without any comment on the facts or the law. Therefore, the statement by the defendants on p.2 of the Opposition indicating the judge found no "controlling question of law" attempts to pull information from silence on the issue. To the contrary, if the judge found no issues at controversy in fact or law the judge could have made the decision to dismiss at hearing nearly two months prior to the ruling. The court has dismissed the case at hearing on all previous occasions.

**II  A "substantial ground for difference of opinion" can be identified and without an Interlocutory Appeal the litigation, "piecemeal appeals," and cost will be increased to the courts and the plaintiff**

On p.3 of the Opposition the defendants quote *Coates v. BRAZORIA COUNTY TEX.*, *919 F. Supp. 2d 863 (S.D. Tex. 2013)* improperly and incompletely in an attempt to establish no "substantial ground for difference of opinion" exists in the instant case. The quote lists the following conditions to establish a substantial ground, "a trial court rules contrary to all circuit courts; a question of first impression is presented on which other circuit courts are split; or complicated questions arise under foreign law." However, the final period is incorrect. It should be a comma or an ellipsis as another condition is provided in the court's opinion. It is possible this final condition was omitted because it is fatal to the government's argument. The end of the quote should read, "...foreign law, or if novel and difficult questions of first impression are presented." This very issue has been determined by the 5th Circuit Appeals Court in *Dierlam v. Trump, 977 F.3d 471 (5th Cir. 2020)*. On p.475 the court states, "In 2016, Dierlam sued the Government pro se, bringing numerous and novel statutory and constitutional claims." This final

condition is definitely applicable to the instant case. This pronouncement by the 5th Circuit is also applicable to other claims in the Complaint not just the RFRA claim discussed here. I do not know of any ruling of the 5th circuit, which determined definitively whether a RFRA claim can be split into prospective and retrospective relief as the Court has ruled in the instant case in opposition to the ruling of the court in *Korte v. Sebelius, 735 F.3d 654, 672 (7th Cir. 2013).* See p.3 of the Motion For Vacatur of PMTD, a New Order granting PMTD with Interlocutory Certification, and a Stay Pending the Appeals Court Decision. A search did not appear to return any results of other circuit courts with any ruling similar to *Korte.* The first condition in the *Coates* quote above may also be met. *Korte* may be the only court to rule on this issue, therefore the instant court may have ruled contrary to ALL circuit courts.

The justices in the *Clark-Dietz* case indicated, "The basic rule of appellate jurisdiction restricts review to final judgments, avoiding the delay and extra effort of piecemeal appeals." I fully intend to appeal the dismissal of the 20 and 1/2 claims in the complaint with or without the remaining 1/2 RFRA claim. If this court does not grant the Motion it will potentially cause "delay and extra effort of piecemeal appeals" and litigation. It may well be a strategy on the part of the government by delay and attrition to prolong this lawsuit until I am dead. I am well aware my time is finite and the lack of health insurance or Medicare may shorten that time. The new HHS rules are to be finalized soon and may make it impossible for me to obtain Medicare because of my religious objections for the support of abortion and gender affirming care. The new rules have NO religious exemption and are a violation of the 1st amendment to the Constitution as determined by the Supreme Court since they are undoubtedly a government benefit. See *Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 717-18 (1981).* If I am

3

forced to appeal this case without half the RFRA claim because I can not wait several more months, I will either ask the Appeals court to reinstate the claim, because of the duress of this case being held hostage for these reasons, or I may file another complaint to obtain relief if necessary for the retrospective RFRA claim and the finalized new HHS rules. Very much contrary to the assertions of the defendants on p.3, and pp.5-7 the chance of "piecemeal appeals," effort by the courts, and additional litigation will be greatly increased and complicated without an interlocutory appeal. A delay will only benefit the government; it will greatly increase the work and expense of both the plaintiff and the courts.

### III  The government does admit culpability in a RFRA violation and an Interlocutory Appeal can simplify any remaining proceedings

Contrary to the statement from the Opposition in footnote 1, statements made by the government on pp. 3-4 of their Response To Magistrate Judge's Report & Recommendation, Dkt#73, appear very much to admit culpability in a violation of RFRA. The agencies quote 82 Fed. Reg. 47,800,

> ...requiring certain objecting entities or individuals to choose between the [Contraceptive] Mandate, the accommodation, or penalties for noncompliance imposes a substantial burden on religious exercise under RFRA.

Also logically, without at least some culpability, the government has no reason to settle any claim.

The proposed settlement of $5,626.22 mentioned by the government on p.5 of the Opposition, I find grossly inadequate for future, present, and even past damages. I request the return of this money in every claim that will allow monetary damages, which is to say nearly every claim. In claim 2, I also request the court require the defendants to purchase for the equivalent of all years I was without health insurance, a policy for the same number of years

dependent upon the damage to the market to be determined by discovery. Claim 3, the RFRA claim, also has a request dependent upon damage to the market. In addition, I requested the ability to update and change the relief based upon future events, as well as any relief the court may find appropriate. Many of the twenty one claims involve a violation of freedom of religion or other 1st amendment claims. The name of the Religious Freedom Restoration Act alone implies a first amendment violation. The same or similar actions by the defendants were responsible for simultaneous and related violations of this amendment. For example, a violation of the freedom of association by a compelled association has been held by the Supreme Court in *Janus* to violate the underlying freedoms of religion and speech of some nonunion members in a compelled collective bargaining association. Therefore, contrary to the statement of the defendants on p.6, if the Appeals court should allow other claims to survive or just simply allow discovery, the proceedings of this court would be radically different as compared to the currently proposed proceedings based upon a mere retrospective RFRA claim. As implied previously, such proceedings could be unreasonably time consuming if not practically nonexistent as well. There are no "claims remaining for adjudication by the finder of fact" for the retrospective RFRA claim in this case.[1] The disagreement of the parties resides in what is proper relief. The appeals court would have no decision to make if this claim remains in this court other than to determine if relief is proper if an appeal were to be made. However, that question in large part will be answered by the interlocutory appeal. See footnote 4 of *Coates v. BRAZORIA COUNTY TEX., 919 F. Supp. 2d 863 (S.D. Tex. 2013).* On the other hand, if the interlocutory appeal is allowed and the Appeals court rejects the appeal and unambiguously indicates agreement with the decisions of the lower court, great doubt would exist as to the efficacy of any future appeal and

---

1   *Coates v. BRAZORIA COUNTY TEX., 919 F. Supp. 2d 863 (S.D. Tex. 2013).*

the litigation would likely terminate soon after return to this court. It is therefore in the Court's

SELF interest to allow the appeal. The potential benefit far exceeds any risk.

## IV The burden of a § 1292(b) appeal is lower than indicated by the defendants. Several Court decisions indicate a guidance can be final agency action.

On p. 4 of the Opposition under the Title <u>First</u>, the government seems to misunderstand

28 U.S.C. § 1292(b). I am inviting the court to widen its focus to admit the mere existence of

other possibilities, which is my only and much smaller burden. Otherwise, there is no reason for

§ 1292(b) to exist if it were required to convince a court its decision was wrong. If I am entitled

to retrospective relief under RFRA, the behavior which gave rise to this entitlement should also

give rise to an entitlement to prevent future violations. This lawsuit was initiated in part to

prevent the government from violating my religious freedom in requiring me to violate religious

principles for some benefit which courts have determined to be important. My previous

submissions provide evidence the government has not changed its desire to alter my religious

and other behavior to conform to their will. The new HHS rules which will include abortion and

contraception in Medicare as well as require health insurance contracts to include gender

affirming care are examples of this continuing violation. To call this violation moot is contrary to

reason and reality.

On p. 4 of the Opposition under the Title <u>Second</u>, the government seems to pay little

attention to the citations given. Perhaps the government missed it in their statement on the top of

p.5 of their Opposition, but the March 2022 guidance is the HHS guidance relevant to the instant

case. P.8 of my Reply To Defendants' Opposition To Plaintiff's Motion For Preliminary

Injunction, Dkt#133, cites *Tex. v. EEOC, et al, No. 2:21–cv–00194–Z (N.D. Tex. May 26, 2022)*

which explicitly refers to this guidance as having immediate legal consequences. On p.7 of the

same document is a quote from the court in *FRANCISCAN ALLIANCE, INCORPORATED v.*
*Becerra, No. 21-11174 (5th Cir. Aug. 26, 2022)* which indicates the court arrived at a similar
conclusion. I also cited *Op. & Order at 2, Neese v. Becerra, 2:21-cv-163-Z, ECF No. 66 (Nov.*
*11, 2022)* to support the "proposition that 'guidance' 'has been considered final by other courts,'"
as stated by the defendants although the guidance referred to in this case has a different date. The
judge's analysis in this case is very insightful. The judge indicates neither *Bostock* nor Section
1557 apply to the Sexual Orientation and Gender Identity categories HHS sought to extend with
these articles. The judge also explains that the Declaratory Judgment Act allows a prospective
defendant to sue as the plaintiff. "In a declaratory-judgment action, the relevant cause of action is
the defendant's anticipated lawsuit against the plaintiff." Id. The plaintiff does not need to wait
for the defendant to sue or harm them before action is possible.

　　　　In all three cases cited above the court found the plaintiffs had standing even though the
rule they complained of was NOT yet final. Similar to the March 2022 guidance, the guidance of
May 10, 2021 which determined final agency action with legal consequences for the plaintiffs in
this latter case cited above. The date of the guidance may be different than the March 2022
guidance but the concept and subject matter is the same. Contrary to the statement of the
government on p.4, a guidance can very much have legal consequences as found by these courts.
Further, the very basis which HHS attempts to use ACA Section 1557 to provide special
protection to SOGI categories is invalid. These categories have no special protection under
existing law. Therefore, Section 1557 does not support nor has any relevance to the guidances,
which are independent legislative actions by the defendants.

**V The new HHS rules were anticipated in the Complaint. I have no burden to specify any**
**underlying statute for these rules and at least one Court has found that the new rules have**

**no legitimate basis in the §1557 statute.**

Also on p.4, the defendants state I can not challenge the new HHS rules since "...this claim is not properly before the Court because it is not raised in the third amended complaint..." In ¶292 and 295 of the 3AC, I explicitly request an injunction to prevent the defendants from "...creating any addition to essential minimum coverage which could affect faith and morals..." ¶96 predicts and explicitly includes future ultra vires activity on the part of the defendants along the same lines. The new HHS rules definitely fall within the range of violations mentioned in the 3AC.

The *Franciscan Alliance* court indicates a challenge to a rule is a challenge to the underlying statute. I therefore have no requirement to specify any statute in this context in my Complaint.

> HHS's argument relies on a false dichotomy. HHS implicitly argues that a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different. But as the Court recently noted in FEC v. Cruz, a challenge to an agency regulation is necessarily a challenge to the underlying statute as well. That's because an agency literally has no power to act—including under its regulations —unless and until Congress authorizes it to do so by statute. In that case the government argued—as it does here— that plaintiffs who sued challenging the agency's regulation had no standing to seek injunctive relief against enforcement of the statute. That argument rested on the faulty premise that the plaintiffs were suing a regulation. Rather, the Court said the right way to view the plaintiffs' suit was as challenging one Government action that causes their harm: the [Government's] threatened enforcement of the [statute], through its implementing regulation. (footnotes and internal quotations omitted) *Franciscan Alliance, Inc. v. Becerra, 47 F.4th 368 (5th Cir. 2022).*

However, as shown above Section 1557 is a smokescreen for what the agency defendants want to impose ultra vires upon the population, which is a violation covered under Claim 1 if not other claims of the 3AC. The claims in the complaint do relate to the new HHS rules.

**VI "Private Parties" are acting as "State Actors."**

The cases which follow more specifically relate to the 14th amendment, which extends the

requirements of the US Constitution to the States, however the same principles apply to the federal government. To show the government has violated Constitutional rights by a means other than directly through the government or its employees involves a two part inquiry, "...First, the deprivation must be caused by the exercise of some right or privilege created by the State..." and "...Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor..."[2] "Courts have characterized private parties as state actors where a state allows or is involved with conduct that would be unconstitutional should the state itself engage in that conduct."[3] Courts have thus far recognized:

> ...a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, ...(ii) when the government compels the private entity to take a particular action...; or (iii) when the government acts jointly with the private entity... (internal citations omitted) *Manhattan Community Access Corp. v. Halleck, 139 S. Ct. 1921, 204 L. Ed. 2d 405, 587 U.S. (2019).*

A case by case evaluation is required "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."[4] 29 CFR § 510.25 lists various traditional government functions. On this list is Hospitals, Public Health, and Social Services. A private health insurance company is now involved in all of these areas. The ACA essentially destroyed an industry and built a new one. It appears the ACA transformed the health insurance companies to fill these government roles. The health insurance companies are more benefits administrators than insurance companies. The ACA created the Individual Mandate, which has not been repealed. The government through "minimum essential coverage" and other regulation has dictated what benefits must be afforded to certain groups

---

2   *Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).*
3   *United States v. Texas, No. 1: 21-CV-796-RP (W.D. Tex. Oct. 6, 2021)* from p.662
4   *Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).*

some without cost to these groups leaving the remainder to shoulder the burden. It is these private companies which write the health insurance contract which MUST by default include the terms dictated by the government. The new HHS rules go even further. The new rules require these private companies to include "gender affirming" care in their policies. Several people, who have been sterilized or caused other permanent harm, have regretted their procedures. Will the government shield these companies from liability like the COVID vaccine manufacturers? Would these companies take on that liability on their own, if they had a choice? The dissenter of the IOM panel, who had insurance industry experience, provides a scientific and rational basis as to what coverage should be included on an insurance policy. See p.18 and 84 of the 3rd Amended Complaint. Item (ii) has clearly been established. The new HHS rules change Medicare to require abortion coverage and "gender affirming" care. Medicare is undoubtedly a government program administrated by a state actor. All of these facts indicate health insurance companies are state actors which are violating the 1st, 4th, 5th, 9th, and 10th amendments on behalf of their government masters. The unprecedented level of control shown here goes well beyond simple regulation and reaches a level which directs the internal decisions of a private company. For all the reasons above, item (iii) has also been established. The court's recent ruling is contrary to this body of law. The argument here can be used to help support several of the Claims in the Complaint including Claims 1, 6, 8, 9, 11, 12, 13, 14, 16, and 17.

## Conclusion

The appeals court is the proper and most efficient place to decide the remaining issues in this case. Justice will be served by an interlocutory appeal. Therefore, for the reasons above the Motion should be granted.

## Certificate of Service

I certify I have on 1/27/2023 mailed a copy of the above document to the clerk of the court at:

United States District Clerk
Southern District of Texas
515 Rusk, Room 5300
Houston, TX 77002

as I do not have access to the Court's electronic filing system. I have also mailed a copy to Defendant's Counsel at:

Rebecca M. Kopplin
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

I have emailed a courtesy copy to the defendant's counsel at Rebecca.M.Kopplin@usdoj.gov as well as the Case Manager for the Judge of the Court at Arturo_Rivera@txs.uscourts.gov.

Date: 1/27/2023
John J. Dierlam
5802 Redell Road
Baytown, TX 77521
Phone: 281-424-2266

11



John J. Dioclam
5802 Redell Rd.
Baytown, TX 77521

United States District Clerk
Southern District of Texas
515 Rusk , Room 5300
Houston, TX 77002

United States Courts
Southern District of Texas
FILED
JAN 30 2023
Nathan Ochsner, Clerk of Court

USPS PRIORITY MAIL®

UNITED STATES POSTAL SERVICE          Retail

P          US POSTAGE PAID          Origin: 77562
           $9.55                     01/27/23
                                     4840650562-07

PRIORITY MAIL®

                                    0 Lb 2.70 Oz
                                    RDC 25

EXPECTED DELIVERY DAY: 01/28/23

                                    C057

SHIP
TO:    515 RUSK ST
       STE 5300
       HOUSTON TX 77002-2607

USPS TRACKING® #

9505 5119 3848 3027 2488 07